[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by the plaintiff husband against the defendant wife on January 22, 2001, for dissolution of their marriage on the ground of irretrievable breakdown.
The parties were married on May 24, 1980 in New Orleans. At the time of the marriage the plaintiff was 22 years of age and the defendant 31. The parties have one child, Marie, born on October 27, 1981 and presently in college.
The parties appeared at trial and each testified. The court observed their demeanor and evaluated their credibility. In addition, the court reviewed and considered the exhibits, sworn financial affidavits, claims for relief, proposed orders and trial memoranda. Based upon the evidence, the court makes the final findings.
This action was commenced on January 22, 2001. The court has jurisdiction and all statutory stays have expired. The marriage has irretrievably broken down and judgment may enter dissolving the marriage on this ground.
The plaintiff is 45 years old. He has a Bachelor's degree in Engineering and has completed some post-graduate work towards an MBA degree at Syracuse University.
The defendant is 54 years of age. The defendant obtained a Bachelor of Science degree in Business in 1981 and an MBA degree in Operation Management from Old Dominion University in 1985. She became a certified public accountant in 1991 and is working towards an advanced certification program in taxes at Pace University in New York.
The defendant's career efforts have been ambitious and industrious. She worked at various positions in Japan prior to the marriage. After moving to the United States, she rapidly advanced in responsibilities, position CT Page 1188 and compensation. She started as an administrative assistant with the Bank of Tokyo in New York City and progressed to positions as an auditor at KPMG Peat Marwick earning $36,000, tax accountant with Price-Waterhouse earning $45,000, tax accountant with SGS North America earning $50,000, tax preparer and auditor at Howmet Corporation earning $48,000, and to her present job in the tax department at Pepsico, Inc. earning approximately $65,000. In addition, during most of this time, the defendant earned additional compensation from contract tax work.
The plaintiff is an engineer and has worked at a number of companies. He was employed as a senior project engineer at Nabisco from 1991 through 1996, with an annual salary of some $59,000 and from 1996 through 2000 as a project engineer at Pepperidge Farms with annual earnings, at the time of termination, of approximately $70,000. He left Pepperidge Farms, for a position with Corning, in Corning, N.Y., as an electrical mechanical project engineer, earning approximately $80,000 per year, where he remained until terminated in October, 2001. He received a severance package from Corning with several weeks of compensation. Thereafter, he secured a position with Loprino, in California, with an annual salary of $72,000 commencing December 2001, but was terminated in March 2002, with a short term severance package.
After Loprino, the defendant received unemployment benefits from April, 2002 until August, 2002. In August, 2002, the plaintiff obtained employment with Maverick Technologies as an engineer project manager with a salary of $78,000, but was terminated on October, 4, 2002.
The plaintiff claims that since he lost his position at Maverick Technologies in October, 2002 he has been searching actively for a new position. However, the plaintiffs history of a lack of the necessary effort to maintain and retain his previous employment positions call this claim into question.
The plaintiff suffers from phlebitis and asthma, but these conditions do not affect his ability to work. The defendant has suffered from bouts of depression, commencing at some point early in the marriage, which, at times, interfered with sexual relations.
At some point in 1992, or thereabouts, the defendant lost her position at Price Waterhouse. She continued her contract tax work until she found a new position. During this period, the plaintiff requested that the defendant move out of the marital bedroom because her restlessness was disturbing his sleep. At the same time he pressured her to complete the requirements for certification as a CPA so that she could increase the amount of money she would bring to the family. This pressure by and CT Page 1189 behavior of the plaintiff significantly contributed to tension in the marriage and was significant in moving the parties apart. After the defendant received psychiatric assistance, she requested permission to return to the marital bedroom, but was not permitted back for some three years.
Another significant problem for the parties' marital relationship came to the fore in 1987 when the defendant found a large collection of pornographic materials in their home. She confronted the plaintiff and asked that he dispose of them, but the plaintiff refused and continued to add to the collection. When the parties moved from Virginia to New Jersey and then to Connecticut, he brought boxes of these materials with him. In 1998, and for some time thereafter, the plaintiff attempted to convince the defendant to participate in group activities depicted in the magazines. The plaintiffs behavior was offensive, demeaning and psychologically abusive to his wife and significantly contributed to the breakdown of the marriage. In the winter of 2000, shortly after it became clear that the defendant would not be a part of these activities, the plaintiff moved out to live with another woman. The plaintiff bears the primary responsibility for the breakdown of this marriage. This behavior, together with the disparity in the parties' ages which will allow the plaintiff greater ability to acquire assets in the future, make appropriate a diminished distribution to the plaintiff.
A great deal of time and energy was spent during the trial in an attempt to prove what property and funds were brought to the marriage, what personal property was disposed of during the marriage, what investments were made and losses sustained and what the defendant was likely to inherit from her father's estate. After consideration of all of the evidence presented, the court finds that the defendant brought a small amount of money into the marriage, all of which, together with the parties' other assets, was used for appropriate marital purposes, and finds no credible evidence as to the location, current value or marketability of the alleged missing kimono. The court also finds that any investments by the plaintiff were a continuation of prior activities of which the defendant was aware and had information readily available. Furthermore, the defendant made no efforts to stop the investments and provided no proof that the losses were caused by anything other than a decline in the market or that similar losses would not have occurred if no trades been made. Also, there was no credible evidence as to when the defendant will receive her inheritance or that its value would exceed $23,000.
 ORDERS
CT Page 1190
The court has carefully considered the criteria set forth in General Statutes §§ 46b-81 and 42b-82 and the applicable case law in reaching the decisions reflected in the orders that follow:
1. The marriage of the parties having broken down irretrievably is hereby dissolved.
2. Alimony and division of assets:
 a. Family Residence — the parties are the joint owners of property located at 11 Poplar Plain Road, Westport, CT., worth approximately $700,000.
 b. The parties are ordered to immediately place said family residence on the market for sale with a licensed real estate broker. The parties shall mutually agree upon a listing price. If they are unable to do so, they shall each select a real estate appraiser. The appraiser selected by the parties shall jointly select a third appraiser who shall then set the listing price and whose fee shall be an expense of the sale. Each party shall be responsible for the fee of his/her respective real estate appraiser. The parties shall accept any offer within 5% of the listing price. Every 60 days after the listing date, the parties shall review the listing price of the property. If they are unable to agree upon a new price, then the previously listing price shall be reduced by 5%.
 c. When said property is sold, the net proceeds, after payoff of the first and second mortgages and the usual and standard closing costs (including but not limited to the real estate broker's commission, the conveyance taxes and attorneys' fees), shall be distributed as follows:
To the wife — fifty-five percent (55%) of the proceeds.
To the husband — forty-five percent (45%) of the proceeds.
 d. Until the premises are sold, the wife shall be solely responsible for the mortgages and all other costs associated with the house.
 e. The court shall retain jurisdiction for the sale of the property to insure compliance with the above and to resolve any disputes arising from this order.
3. The wife shall return to the husband the stamp collection, Central American items, City of Hiroshima tapestry, and any and all tools CT Page 1191 currently in her possession.
4. The wife shall retain ownership of the Ford Escort. The husband shall retain ownership of the Saturn. Wife shall take any necessary actions to effectuate transfer of title.
5. Other than as provided in Paragraphs #3 4 above, each party shall retain ownership of all personal property currently within their possession and control.
6. Each party shall be responsible for and pay the liabilities listed on their financial affidavits and shall hold the other party harmless thereon unless otherwise ordered by the court.
7. Each party shall be responsible for their own attorney's fees.
8. The defendant shall be entitled to the tax exemption for the parties' daughter for the 2002 tax year.
9. The wife shall provide health insurance benefits, to the extent they are available, for the benefit of the husband by way of COBRA and the husband shall bear and pay for all costs associated therewith.
10. The parties will keep their own bank accounts, pension, IRA and deferred compensation plans.
11. Alimony — The wife shall pay to the husband alimony of $250.00 per week for a period of four (4) months from the date of dissolution, non-modifiable as to
___________________ HILLER, JUDGE CT Page 1192